```
                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    **Plaintiff**,<br><br>              **v.**<br><br>WILBERTO RAMOS-CANDELARIA,<br><br>    **Defendant.** | **Criminal No.** 19—544 (FAB) |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is defendant Wilberto Ramos-Candelaria ("Ramos")'s motion to dismiss certain counts of his indictment for lack of jurisdiction, lack of specificity, and failure to state an offense. (Docket No. 61.)  For the reasons set forth below, the motion is **DENIED**.

**I.  Background**

Ramos was indicted in a superseding indictment on August 14, 2020, for multiple counts of production of child pornography, attempted production of child pornography, receipt of child pornography, possession of child pornography, coercion and enticement of a minor, and transfer of obscene material to a minor. (Docket No. 41.)  The indictment refers to at least twelve minors, all female, between the ages of 12 and 16.  Id.  The indictment contains no other factual allegations amid the recitation of the

elements of each offense, apart from the dates of the alleged crimes and the initials of the victims. Id.

The sealed criminal complaint, however, outlines some of the factual basis for the indictment. (Docket Nos. 3 and 3-1.) In an affidavit by a task force agent with the Department of Homeland Security, the agent explains that the task force initiated an investigation into Ramos, estimated age 27, after receiving a report from the parents of a 12-year-old girl. (Docket No. 3-1 at pp. 3-4.) The girl had been receiving requests via her Instagram account for naked pictures and videos from a person later identified as Ramos. Id. The investigators examined the girl's phone with permission from her mother and confirmed the existence of voice messages from Ramos soliciting pictures and videos of the girl's body parts, including her genitals. Id. at pp. 4-5. The messages include threats by Ramos that he would "upload everything" and "ruin you" after accusing the girl of ignoring him. Id. at p. 5.

Homeland Security agents assumed the girl's Instagram identity to continue communicating with Ramos. Id. at p. 5. The agents interviewed the girl, who stated that she had met Ramos through Instagram and that they had traded pictures and videos through the application. Id. at p. 6. An undercover Homeland Security agent created a new Instagram account, posing as a 14-

Criminal No. 19—544 (FAB)                                                3

year-old girl, and sent a friend request to Ramos's account.  Id. at p. 6.  Ramos accepted the friend request from the undercover agent and eventually sent similar messages requesting pictures of the fictional 14-year-old girl.  Id.  Ramos sent the account a voice message saying he wanted to see her body, including her genitals.  Id. at p. 7.

Based on these allegations, the magistrate judge issued an arrest warrant on August 15, 2019 (Docket No. 4) and Ramos was arrested the next day.  (Docket No. 7.)  A grand jury indicted Ramos on September 5, 2019, (Docket No. 17,) and issued a superseding indictment on August 14, 2020 adding additional victims and counts.  (Docket No. 41).  The factual basis for the counts relating to the other victims is not clear from the superseding indictment.  Id.  Ramos states in his motion to dismiss, however, that "he did not photograph or film[] the minors with his phone or any recording device."  (Docket No. 61 at p. 2.)

**II.  The Motion to Dismiss**

Ramos moves to dismiss all counts of the indictment that allege production or attempted production of child pornography pursuant to 18 U.S.C. § 2251(a).[1]  (Docket No. 61.) Ramos argues that these counts fail to allege a crime pursuant to 18 U.S.C.

---

[1] Counts 1, 5, 8, 11, 14, 17, 19, 22, 24, 26, 28, 30, and 32.  (Docket No. 61 at p. 2.)

§ 2251(a) because there is no allegation in the indictment that he personally filmed, photographed, or videotaped the minor victims. Id. at p. 1. Second, Ramos argues that the statute is unconstitutional as applied to him, in violation of his Fifth and Sixth Amendment rights and the separation of powers doctrine, because his conduct was not that which Congress intended to penalize in enacting 18 U.S.C. § 2251(a), and is already prohibited by 18 U.S.C. § 2252. Id. at pp. 1—2. He argues the counts must be dismissed pursuant to Federal Rules of Criminal Procedure 12(b)(2) for lack of jurisdiction, 12(b)(3)(B)(iii), for lack of specificity, and 12(b)(3)(B)(v), for failure to state an offense. Id. at p. 1.

### A. Legal Standard

Pursuant to the Fifth Amendment, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V. The Sixth Amendment states that the accused shall have the right "to be informed of the nature and cause of the accusation . . . ." U.S. Const. amend. VI. To accord with a defendant's constitutional rights, "the black-letter rule" is that "an indictment is sufficiently particular if it elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which [he] must defend, and enables [him] to

Criminal No. 19-544 (FAB)                                                5

plead double jeopardy in bar of future prosecutions for the same offense."  United States v. Sepúlveda, 15 F.3d 1161, 1192 (1st Cir. 1993) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)).

"Conventionally, a federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges . . . that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes." United States v. González, 311 F.3d 440, 442 (1st Cir. 2002). Congress has clarified that the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1). Federal Rule of Criminal Procedure 12(b) allows a defendant to move to dismiss an indictment for lack of jurisdiction and for defects in the indictment, including lack of specificity and failure to state an offense.  See Fed. R. Crim. P. 12(b)(2) & 12(b)(3)(B). "What counts in situations like this are the charging paper's *allegations*, which we must assume are true." United States v. Guerrier, 669 F.3d 1, 3–4 (1st Cir. 2011)(discussing the standard for determining the sufficiency of a criminal indictment) (emphasis in original).

A motion to dismiss based on failure to state an offense requires the district court to determine whether the indictment's

Criminal No. 19-544 (FAB)                                                                 6

allegations are sufficient, but not to weigh, before the trial and on a contested record, whether the government has sufficient evidence to establish that the offense was committed. Compare United States v. Espy, 145 F.3d 1369, 1372-74 (D.C. Cir. 1998)(affirming district court's dismissal of one count of the indictment for failure to state an offense, based on the court's interpretation of the meaning of the words "department" and "agency" as not reaching the executive office of the president and therefore not the defendant), with United States v. Stepanets, 879 F.3d 367, 373-74 (1st Cir. 2018)(reversing district court dismissal of indictment where defendant's motion was actually a factual argument that the defendants did not perform pharmacy duties within the meaning of the statute, rather than a legal argument that the indictment did not plead sufficient facts). The former is proper for a pre-trial motion to dismiss, while the latter is premature before facts are presented to the factfinder or stipulated to by the parties. See United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015)(affirming district court denial of motion to dismiss the indictment where the defendant's argument "rested on factual disputes left to the factfinder").

Criminal No. 19-544 (FAB)                                                          7

**B.  Analysis**

    **1.  Failure to Allege Essential Element of 18 U.S.C. § 2251(a)**

Ramos argues that it was not Congress's intent to criminalize his type of conduct with 18 U.S.C. § 2251(a). (Docket No. 61 at pp. 2–4.)  Instead, the statute was meant to penalize defendants who are dedicated to the production of child pornography and who personally film or videotape a minor engaging in sexually explicit conduct, not in cases where the child pornography is 'self-produced' by the minor. Id.  To make this point, Ramos describes the legislative history of the statute starting from 1977. Id. at pp. 4–15.  The United States argues that Ramos is prematurely asking for a sufficiency of the evidence analysis, and that directly filming minors is not an element of the charged offenses. (Docket No. 68 at p. 2.)

To determine the elements of a charged offense, the analysis must start with the text of the statute. See Colón-Marrero v. Vélez, 813 F.3d 1, 11 (1st Cir. 2016)("Our starting point in discerning the meaning of a statute is the provision itself . . . .").  The relevant portion of the statute is:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct,

Criminal No. 19-544 (FAB)                                                8

>     shall be punished as provided under subsection (e) . .
> . .

18 U.S.C. § 2251(a).  And 18 U.S.C. § 2256 states that "[f]or the purposes of this chapter, the term—  (3) 'producing' means producing, directing, manufacturing, issuing, publishing, or advertising."  18 U.S.C. § 2256.

### Contrary Precedent

As a first point, the First Circuit Court of Appeals has expressed in *dicta* an interpretation of the statute that directly contradicts Ramos's assertion that the statute requires that the defendant himself film the victim.  See Ortiz-Graulau v. United States, 756 F.3d 12, 19 (1st Cir. 2014) ("[T]he terms employ, persuade, induce, entice, and coerce reach various types of external pressure that a defendant might apply on a minor to get him or her to engage in sexually explicit conduct.  **These terms could reach a defendant's conduct even if the pressure were remotely applied and the defendant had no involvement in any actual filming or photography, so long as that pressure were applied with the intent to cause a minor to be visually depicted in a sexually explicit manner**.") (emphasis added).  Other circuits have also stated that the statute reaches conduct where the defendant requests photos and/or videos that the victim takes of himself or herself.  See United States v. Caniff, 955 F.3d 1183, 1192 (11th

Criminal No. 19-544 (FAB)                                                    9

Cir. 2020) (where defendant had sent text messages to a 13-year-old girl requesting pictures of her genitals and of her masturbating, "[t]itle 18 gives the government ample—and clear—authority to punish those . . . who solicit child pornography through private text messages. Perhaps most on point, 18 U.S.C. § 2251(a) . . . extends not only to those who solicit minors for sex, but also to those, like Caniff, who ask for nude photos . . . .") (emphasis in original); United States v. Kokayi, 2021 WL 3733010, at *13 (4th Cir. Aug. 24, 2021) (*per curiam*), cert. denied, 142 S. Ct. 823 (2022)(finding sufficient evidence for predicate offense based on 18 U.S.C. § 2251 where "the evidence demonstrates that Appellant enticed the Victim to produce live visual depictions of her naked body and masturbation (simulated or real) *for the purpose* of transmitting those live video depictions to Appellant.")(emphasis in original).

### The 'Producing' Requirement is not in Active Voice

The phrase "for the purpose of producing any visual depiction" does not clearly require the defendant be the person who produces the image, but merely that the defendant have a purpose that a visual depiction be produced.  Cf. United States v. Ortiz-Graulau, 526 F.3d 16, 19 (1st Cir. 2008) ("As for Ortiz' intended use of the photographs, the statute's language requires only that a visual depiction **be made**.") (emphasis added); United

Criminal No. 19—544 (FAB)                                        10

States v. Laursen, 847 F.3d 1026, 1032-33 (9th Cir. 2017) (where victim took sexually explicit 'selfies' at the defendant's behest, the court mirrored the passive voice of the statute in finding that "[t]he pornographic photographs **were produced** after Laursen told J.B. that the two 'looked good together' and that '*he* wanted to take pictures.' . . . This evidence established that Laursen directed J.B.'s actions, at a minimum engaging in active conduct that **resulted in** the production of child pornography.")(emphasis added).

### **Definition of 'Producing'**

The word "producing," moreover, has a broader definition within the statute than taking a photograph or directly filming a subject. See 18 U.S.C. § 2256(3) ("'producing' means producing, directing, manufacturing, issuing, publishing, or advertising."); see also United States v. Poulin, 631 F.3d 17, 22 (1st Cir. 2011) (rejecting defendant's argument that "production occurs only in a recording device" and finding that "Congress did not intend so technical a definition of the term 'produced' . . . ."); United States v. Fadl, 498 F.3d 862, 867 (8th Cir. 2007) ("Congress intended to retain a non-technical definition of the term 'producing' (that is, in the sense of creating or making), but also sought to expand its scope to include activities that may

Criminal No. 19-544 (FAB)                                              11

not be generally considered to fall within the typical meaning of the term.").

In United States v. Burdulis, the First Circuit Court of Appeals analyzed another section of the child sexual exploitation law and had to determine if "the word 'produced' in the statute refers only to the initial creation of the pornography." Burdulis, 753 F.3d 255, 261 (1st Cir. 2014) (analyzing a section of 18 U.S.C. § 2252 prohibiting possession of child pornography that "was produced using materials" mailed or shipped in interstate or foreign commerce). Under the defendant's proposed definition, the word 'produced' would strictly refer to "the initial creation of the pornography" and as such production is only with materials like "the camera used in capturing the video, but not a hard drive later used to download the video from the internet, nor a disk onto which the video was copied." Id. The court held that even under the dictionary definition of 'produce' pointed to by the defendant, i.e. "[to] bring into existence," a copy saved onto a new storage device would be considered 'produced' "because to create a copy from an original is to bring something into existence: the copy." Id.; see also United States v. Hernández Rodríguez, 845 Fed. Appx. 743, 748 (10th Cir. 2021) (unpublished) ("Similarly, a visual depiction that is 'created' when captured by a camera is 'produced' when it is

Criminal No. 19—544 (FAB)                                          12

duplicated and stored on a new device."). The word 'produce,' therefore, encompasses actions beyond the initial creation of an image with a camera. See Burdulis, 753 F.3d at 261; Lovgren v. Locke, 701 F.3d 5, 26 (1st Cir. 2012)(quoting Dep't of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 342 (1994))("Under traditional rules of statutory construction, 'identical words used in different parts of the same [A]ct are intended to have the same meaning.'").

### Congressional Intent

Ramos cites to various excerpts of the legislative history of the statute and its amendments to argue that Congress did not intend for section 2251(a) to reach his type of conduct. (Docket No. 61 at pp. 4—15.) The legislative history cited by Ramos, however, is ambiguous at best; for example, in House Report No. 98—536, the report stated that a new "reproduction" offense may be needed just for those who pirate photos from other publications or purchase photos for reproduction because "section 2251 of Title 18, Production Offense, seems to require that a producer also be directly involved in inducing the child to pose for the photography in question before violating the Act." H.R. Rep. No. 98-536, at 494 (1984). But inducing a child to pose for photography says nothing about who is required to take such

Criminal No. 19—544 (FAB)                                              13

photography, and merely begs the question whether the 'producer' is also the photographer.

Rather than find that Congress had a narrow focus for the statute, courts have consistently stated instead that Congress intended a broad reach.  See Poulin, 631 F.3d at 23 ("Congress intended a broad ban on the production of child pornography and aimed to prohibit the varied means by which an individual might actively create it."); United States v. Torres, 894 F.3d 305, 316 (D.C. Cir. 2018)("When amending Section 2251 in 1996, Congress found that 'the use of children in the production of sexually explicit material ... is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved' and that 'the sexualization and eroticization of minors through any form of child pornographic images has a deleterious effect on all children.' Congress in Section 2251(a) proscribed any and all instances of a defendant's use of a child to engage in sexually explicit conduct with the requisite purpose to photograph.")(citation omitted); United States v. Fletcher, 634 F.3d 395, 403 (7th Cir. 2011)("Congress may legitimately conclude that even a willing . . . minor is entitled to governmental protection from 'self-destructive decisions' that would expose him or her to the harms of child pornography.").

Criminal No. 19-544 (FAB)                                                        14

The Court is not persuaded that personally filming the victim is an element of 18 U.S.C. § 2251(a), and thus the indictment did not need to include this allegation.  The First Circuit Court of Appeals did hold that a defendant "uses" a minor within the meaning of the statute when that defendant intentionally photographs the minor engaging in sexually explicit conduct, see Ortiz-Graulau, 756 F.3d at 18, but the government has multiple other verbs to choose from in the statute (employ, persuade, induce, entice, coerce) and need not at this point elaborate on its theory of the case.  See United States v. Platter, 514 F.3d 782, 787 (8th Cir. 2008) ("Generally, the government is free to prove a defendant's liability for one criminal offense by using multiple theories of guilt.").  Accordingly, Ramos's argument cannot sustain a motion to dismiss.

The government must, of course, establish all elements of the crime through admissible evidence at trial, and Ramos is free to make a motion for a judgment of acquittal at the close of the government's evidence if it has not done so.  See Fed. R. Crim. P. 29.

   2.   **Violation of Fifth Amendment, Sixth Amendment, and the Separation of Powers**

Ramos also argues that the statute would be unconstitutional as applied to him in violation of the Fifth

Criminal No. 19—544 (FAB)                                                    15

Amendment, Sixth Amendment, and the separation of powers doctrine. (Docket No. 61 at p. 1.)  Ramos does not, however, explain how the statute's application violates those constitutional rights[2] nor how it violates the principle of the separation of powers.  Cf. Seling v. Young, 531 U.S. 250, 271 (2001) (Thomas, J., concurring) (quoting United States v. Christian Echoes Nat. Ministry, Inc., 404 U.S. 561, 565 (1972)) ("[A]n 'as applied' challenge is a claim that the statute, 'by its own terms, infringe[s] constitutional freedoms in the circumstances of a particular case.'").  The Court will not dismiss the indictment based on conclusory legal propositions.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving to the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

**IV. Conclusion**

For the reasons set forth above, Ramos's motion to dismiss certain counts of the indictment is **DENIED**.  (Docket No. 61.)

---

[2] The Court admits concern with the threadbare factual allegations in the indictment. See United States v. Hillie, 227 F. Supp. 3d 57, 74 (D.D.C. 2017) (("Counts One through Seven do not include any allegations of fact that would enable this Court to ascertain the precise conduct of Hillie's that the government believes constitutes production and possession of child pornography. Thus, in accordance with the great weight of authority, it appears that the first seven counts of the indictment do not pass constitutional muster.") Ramos, however, has not made any specific argument explaining whether or how the indictment comports with his constitutional rights and the Court will not do so for him.  See Zannino, 895 F.2d at 17.

Criminal No. 19—544 (FAB)                                                    16

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 5, 2022.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE
